# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2829 | **DATE** | 9/6/2001 |
| **CASE TITLE** | | Herbstein vs. Bruetman | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** We affirm the decision of the Bankruptcy Court.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 07 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | FILED FOR DOCKETING 01 SEP -6 PM 2:39 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DIEGO HERBSTEIN,                          )
                                          )
            Plaintiff-Appellee,           )
                                          )
      vs.                                 )        01 C 2829
                                          )
MARTIN BRUETMAN,                          )
                                          )
            Defendant-Appellant.          )

## <u>MEMORANDUM OPINION</u>

CHARLES P. KOCORAS, District Judge:

### INTRODUCTION

For nearly eleven years Diego Herbstein and Dr. Martin Bruetman have engaged in multiple litigations against each other. Most recently Herbstein filed an Amended Adversary Complaint in the Bankruptcy Court for the Northern District of Illinois seeking to deny Dr. Bruetman's discharge in bankruptcy and to determine the dischargeability of a debt owed to him by Dr. Bruetman. The Bankruptcy Court of the Northern District of Illinois granted Herbstein's motion for summary judgment on Counts I and II of the Amended Adversary Complaint, concluding that the debt was nondischargeable. The Bankruptcy Court denied Dr. Bruetman's cross-motion for



summary judgment on Counts I and II. Now Dr. Bruetman appeals. For the foregoing reasons, we affirm the Bankruptcy Court.

## BACKGROUND

Myriad events spanning more than a decade have led to the dispute at hand. Not all of them are relevant to the task before us, so we limit our recitation accordingly. In late 1986 or early 1987, Dr. Martin Bruetman solicited money from Diego Herbstein to invest in a business venture aimed at establishing a sophisticated medical diagnostic center in Buenos Aires, Argentina. Under Dr. Bruetman's proposal, he and Herbstein were to provide equal amounts of capital to fund the venture. In April 1987, Herbstein began making payments to Dr. Bruetman. By July 1987, Herbstein's contributions to the investors' newly formed company, Alta Technologia Medica S.A. ("Altec-1"), totaled approximately $447,000. Herbstein says he intended those funds to comprise his capital contribution to the business in exchange for receiving 50% of the company's issued stock.

By late 1987, problems developed between Herbstein and Bruetman. Herbstein suspected that Bruetman was using Altec-1's time, money, personnel, overhead and resources to develop another business unrelated to the venture. The two agreed to make some changes including the formation of a new business venture and the reconfiguration of titles and stock holdings.

Despite these changes, the problems continued. Herbstein brought some of these problems before the Criminal Courts in Argentina by filing in March of 1989 a request for an investigation concerning allegations of fraud against Bruetman. On October 10, 1990 the Court "temporarily dismissed" the action, ruling that no one was to be prosecuted. Bruetman, too, sought recourse in the criminal court. In March 1989 he filed in the same court a request for an investigation. On October 10, 1990, the court temporarily dismissed his request finding inadequate evidence to support a finding of fraud. Herbstein also sought civil relief in the Commercial Division of the Argentine court system in August 1989. He filed a suit requesting the removal of Bruetman and others as directors and seeking a determination that those directors had wrongfully carried out their duties at the newly formed company.

Moreover, Herbstein turned to the American courts for relief. On October 16, 1989, before any ruling in the Argentine civil case, Herbstein filed a complaint in the United States District Court for the Southern District of New York (the "New York action"). The five-count complaint asserted claims of racketeering, breach of fiduciary duties, fraudulent misrepresentation, fraudulent concealment, and conversion. The proceedings lasted nearly three years, from October 16, 1989 to August 10, 1992. Counsel represented Bruetman at all times while the case was pending. Through counsel, Bruetman filed an answer, engaged in discovery,

participated in the preparation of a Pretrial Order filed by the parties, and filed and briefed a motion for summary judgment. During discovery, the parties deposed at least twelve witnesses. Herbstein's deposition lasted seven days, generating a transcript exceeding 1200 pages; Bruetman's deposition ran even longer, on ten separate days, generating a transcript exceeding 1800 pages. The parties exchanged thousands of pages of documents. Bruetman and other defendants retained an expert witness.

In October 1991 as the parties continued to engage in discovery, the New York court granted Herbstein's application for an order requiring Bruetman to disclose his financial assets and liabilities. That information was relevant to the punitive damages Herbstein planned to pursue at trial. Bruetman did not comply with the court's order. A subsequent order was issued on July 14, 1992, this time specifying that if Bruetman failed to comply by July 23, he would suffer the penalty of a default judgment for the relief demanded in Herbstein's complaint. On July 23, Bruetman's counsel apprised the court via a letter that Bruetman and his companies could not comply with the order "because of their inability to assemble and prepare the financial information requested without professional accounting assistance." The letter acknowledged that this non-compliance subjected Bruetman to default judgment and advised that no appeal would

be taken from any default order entered as a result of failure to comply with the court's order.

On August 10, 1992, the New York court entered a default judgment against Bruetman. The order declared that Bruetman had willfully failed to comply with the court's order to produce affidavits and documents concerning their current assets and liabilities. Bruetman did not appeal the judgment.

Approximately one year after entry of the default judgment, the Argentina court rendered a ruling in Herbstein's civil case. Although Herbstein had labeled his case an "individual action for responsibility," the court ruled that damages could be awarded only for acts found to injure the corporation directly, not for acts that harmed individual stockholders such as Herbstein. Accordingly, the court concluded that the wrongful conduct alleged by Herbstein did not support an individual action. The court reclassified the action and analyzed its viability as a shareholder derivative suit on behalf of the corporation. That decision was "revoked" on appeal, however. On December 19, 1995, the reviewing court found that the action could not be reclassified as a derivative suit on behalf of the corporation.

On March 22, 1999 Bruetman filed a petition in bankruptcy in the Northern District of Illinois pursuant to 11 U.S.C. § 101 et seq. The Bankruptcy Court entered an order discharging Bruetman's debts on July 8, 1999. Following the discharge

Herbstein initiated an Adversary Complaint to recover from Bruetman the debt owed pursuant to the New York default judgment. Herbstein filed a motion for summary judgment to determine the dischargeability of the debt owed pursuant to the New York default judgment. Specifically, the motion asked for summary judgment on Counts I and II of the complaint. Count I was based on § 523(a)(2)(A), which excepts from discharge any debt incurred by false pretenses, a false relationship or actual fraud, and Count II was based on § 523(a)(4), which excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny. Herbstein argued that the New York default judgment had determined issues of fraudulent misrepresentation and fraud or defalcation while acting in a fiduciary capacity. As a consequence, according to Herbstein, Bruetman was collaterally estopped from contesting the dischargeability of the debt under Counts I and II. The Bankruptcy Court agreed and granted Herbstein's motion.

Bruetman also moved for summary judgment on the Amended Adversary Complaint. He claimed that the issues asserted in Counts I and II were fully litigated in Argentina and determined adversely to Herbstein. The Bankruptcy Court rejected those contentions and denied the motion.

Dr. Bruetman now appeals the Bankruptcy Court's decision.[1] His brief names six grounds for the appeal, namely that

- The trial court erred as a matter of law in holding that there is no genuine issue as to any material fact in connection with Herbstein's motion for summary judgment;
- The trial court erred as a matter of law in holding that the issues sought to be precluded in the adversary proceeding were the same as those involved in the New York litigation;
- The trial court erred as a matter of law in holding that the issues sought to be precluded in the adversary proceedings were actually litigated in the New York litigation;
- The trial court erred as a matter of law in holding that the determination of the issues sought to be precluded in the adversary proceedings was essential to the final default judgment in the New York litigation;
- The trial court erred as a matter of law in holding that the cross-motion for summary judgment based on principles of comity and the preclusive effect of the Argentina litigation was factually inadequate to support summary judgment as a matter of law; and
- The trial court erred as a matter of law in holding that Dr. Bruetman did not demonstrate errors in fact or law which warranted the altering or amendment of the judgment.

---

[1] In reaching this decision, the Bankruptcy Court relied on the parties' statements of undisputed facts filed pursuant to Local Bankruptcy Rules 402M and 402N. (Mem. Op. of March 8, 2001 at 3.) Specifically, the Bankruptcy Court noted that Dr. Bruetman filed in response to Herbstein's motion for summary judgment a Rule 402N statement that did not contest the facts and proceedings shown in the Southern District of New York case. When Dr. Bruetman later filed his cross-motion for summary judgment, he filed a Rule 402M statement to which Herbstein was given no opportunity to respond. The Bankruptcy Court was careful to explain that its Memorandum Opinion "assumes arguendo the accuracy and authenticity of every document and fact asserted by Dr. Bruetman in connection with his motion (which said documents and facts are not, however, treated as responsive to Herbstein's motion since they were not offered in response thereto)." (Id.)

These grounds comprise three general categories of appeal: errors in identifying genuine issues of material fact and applying the procedural standard for motions for summary judgment (Ground 1); errors in applying the collateral estoppel doctrine (Grounds 2, 3 and 4); errors in determining the effect if any of the Argentina litigation (Ground 5); and errors in applying the standard for motions to reconsider (Ground 6).

## LEGAL STANDARD

In reviewing an appeal of a decision of the Bankruptcy Court, we uphold the Court's findings of fact unless clearly erroneous. See In re Marrs-Winn Co., Inc., 103 F.3d 584, 589 (7th Cir. 1996) (citing Fed. R. Bank. P. 8013). We review de novo the Court's legal conclusions as well as its ultimate decision to grant summary judgment. See In re Lefkas Gen'l Partners, 112 F.3d 896, 899-900 (7th Cir. 1997).

## DISCUSSION

1. Absence of Genuine Issues of Material Fact

Dr. Bruetman devotes a substantial portion of his brief to what he perceives as the Bankruptcy Court's "inaccurate," "misleading" and "loose" apprehension and presentation of the facts underlying the dispute. He contends mostly that this looseness "created [a] misleading impression. . . ." We are not in the business of determining what impressions emerge from the Bankruptcy Court's opinion, however. Rather, our task is to determine whether alleged inaccuracies and mischaracterizations

constitute clearly erroneous findings of fact. What Dr. Bruetman deems mischaracterizations we find to be the fair inferences that the Bankruptcy Court was entitled to draw, and no reasonable juror could construe those inferences in favor of Dr. Bruetman. Furthermore, and critically, the Bankruptcy Court did not rely on those challenged factual findings in rendering its judgment.

Ironically, while Dr. Bruetman criticizes the Bankruptcy Court for its overbroad and loose characterizations of the facts, Dr. Bruetman makes similarly loose assertions as to what constitutes factual rather than legal conclusions. At several points in his brief he confuses the two, and part of his challenge of the findings of facts actually encompasses the application of law to the facts. By contrast, at other points in his brief he evinces a tendency to interpret language too narrowly. For instance, he urges us to reject the Bankruptcy Court's finding of fact that he "would not" comply with the New York court's order, arguing instead that he "could not" comply with it. Whether he would not or could not comply is not the issue, however. The stark fact is that he <u>did not</u> comply, and on this the Bankruptcy Court based its decision.

In addition, Dr. Bruetman believes that the Bankruptcy Court erroneously discounted nearly all of his asserted facts pertaining to the New York default judgment because they go behind the record of the proceedings. Dr. Bruetman notes that despite this admonition, the Court went behind the record to find facts leading to its

conclusion that the default judgment was actually litigated and therefore rendered immune from collateral attack. In particular, Dr. Bruetman challenges the Bankruptcy Court's determinations that Dr. Bruetman was "at fault in preventing" the resolution of the litigation, that he "frustrated efforts to bring the action to trial," that the New York court treated Dr. Bruetman's conduct "as a major interference with Plaintiff's effort to prepare for trial," and that the court concluded that Dr. Bruetman "willfully disobeyed repeated court orders and suffered entry of a default judgment." (Amd. Mem. Op. of 3/8/01 at 21, 22, 23, 21.) Each of these conclusions is unassailable. Entry of the default judgment prevented the resolution of the litigation. The default judgment was entered because Dr. Bruetman failed to comply with the court's repeated orders to disclose financial information. The fair inference, and indeed the only reasonable one, was that the fault rested with Dr. Bruetman, not Herbstein. Furthermore, because Dr. Bruetman's conduct brought about the entry of a default judgment, Dr. Bruetman frustrated efforts to bring the case to trial. The court treated the noncompliance as a major interference with Plaintiff's effort to prepare for trial because the noncompliance was precisely that -- a major interference that effectively disabled Plaintiff from gathering facts on which to base its case. As for the Bankruptcy Court's willfulness finding, it lifted that language from the text of the

default judgment. In sum, the Bankruptcy Court drew the only reasonable inferences from the record before it. We find nothing erroneous in those inferences.

Dr. Bruetman also challenges the computation of the judgment award in the default judgment as not being based on competent evidence. (Id. at 25 para. K.) This argument must fail, as the Bankruptcy Court expressly relied upon the calculation of damages in the parties' joint pretrial statement filed in the New York court, the New York judgment order itself, and an affidavit from the attorney who drafted the judgment order. The evidence supporting the computation is sound and we shall not disturb the computation.

## 2. Collateral Estoppel

Dr. Bruetman contends that the Bankruptcy Court erred in determining that Dr. Bruetman was collaterally estopped from contesting the dischargeability of his debt to Herbstein under Counts I and II of the Amended Adversary Complaint. We affirm the Bankruptcy Court's determination.

Collateral estoppel prohibits the relitigation of issues that have been adjudicated in a prior lawsuit. The principles apply in discharge proceedings in bankruptcy court. See Grogan v. Garner, 498 U.S. 279, 284-85 n.11 (1991). Because a federal court rendered the prior judgment in the case at bar, federal principles of collateral estoppel apply. Heiser v. Woodruff, 327 U.S. 726, 732 (1945). Those federal principles

dictate that for a party to be estopped from relitigating an issue, the following elements must be present: (1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must be fully represented in the prior action. See Adair v. Sherman, 230 F.3d 890, 893 (7th Cir. 2000); Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd., 58 F.3d 303, 307 (7th Cir. 1995).

At least three circuits have addressed the intersection of default judgments and the collateral estoppel doctrine in bankruptcy actions. In cases strikingly similar to the ones at bar, the Third, Ninth and Eleventh Circuits have all concluded that where a default judgment was entered against a debtor as a discovery violation, the debtor is collaterally estopped from claiming that the debt underlying the judgment is dischargeable in bankruptcy. See In re Docteroff, 133 F.3d 210 (3rd Cir. 1997); In re Bush, 62 F.3d 1319 (11th Cir. 1995); In re Daily, 47 F.3d 365 (9th Cir. 1995). In the first of these cases, Daily, debtor Dailey filed a petition for relief in the United States Bankruptcy Court for the District of Hawaii. See 47 F.3d at 366. The FDIC filed an adversary complaint to determine the dischargeability of a debt allegedly owed them. See id. Another FDIC action, this one alleging civil RICO violations, was pending in the United States District Court for the District of Kansas in which Daily was

eventually named as a defendant. See id. at 366-67. After unsuccessfully pressing its discovery requests to Daily for nearly two years, the FDIC sought relief under Rule 37. See id. at 367. The District Court entered a default judgment in favor of the FDIC, ordered all allegations of the complaint deemed admitted by Daily, and trebled the damages alleged. See id. When the FDIC moved for summary judgment on its dischargeability complaint, the bankruptcy court held the debt nondischargeable, concluding that the Kansas court's order and judgment in the RICO action established the allegations of fraud in the RICO complaint and that the facts thus established were sufficient to preclude the discharge of Daily's debt to the FDIC under 11 U.S.C. § 523(a)(2)(A) as a debt for money obtained by fraud. See id.

The Ninth Circuit agreed. The judgment entered in the RICO action was "not an ordinary default judgment." Id. at 368. Daily had not merely decided that "the burden of litigation outweighed the advantages of opposing the FDIC's claim" and failed to appear. Id. Instead, he "actively participated" in the litigation for two years before judgment was entered against him Id. The Ninth Circuit concluded that

> [a] party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication. In such a case the "actual litigation" requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so.

_Id._ To hold otherwise, the Court reasoned, would permit debtors to delay substantially and perhaps ultimately avoid paying debts by deliberate abuse of the judicial process. See _id._

The Eleventh Circuit embraced this rationale in In re Bush. 62 F.3d 1319 (11th Cir. 1995.) Bush had been sued by Balfour Beatty Bahamas ("BBB") alleging a claim of fraud. See _id._ at 1321. Although Bush initially participated in discovery, he gradually dropped out of the case. See _id._ His attorney had such trouble contacting his client that he finally received leave to withdraw. See _id._ Bush subsequently failed to produce trial exhibits or appear for a properly noticed deposition. See _id._ When Bush failed to appear at the pretrial conference, the Court found that sanctions were warranted and entered an order for default judgment on the grounds stated in BBB's complaint. See _id._ at 1321-22. Bush filed no objections to the default nor to the final judgment served on him. See _id._ at 1322.

Later that year, in November 1991, Bush filed a voluntary petition for bankruptcy pursuant to Chapter 7. See _id._ at 1322. BBB filed an adversary complaint to determine dischargeability of its judgment debt against Bush. See _id._ In opposition to BBB's motion for summary judgment, Bush argued that the prior judgment should have no preclusive effect because the fraud issue had not been actually litigated. See _id._ Both the bankruptcy court and district court rejected this argument, and the

Eleventh Circuit affirmed, holding that in a bankruptcy discharge exception proceeding, a default judgment based upon allegations of fraud may be used to establish conclusively the elements of fraud and prevent discharge of the judgment debt. See id. at 1322, 1324. As the Court opined, "[i]t would be undeserved to give debtor/defendant a second bite at the apple when he knowingly chose not to defend himself in the first instance." Id. at 1325 (quoting In re Wilson, 72 B.R. 956, 959 (Bankr. M.D. Fla. 1987). Once again, then, an atypical default judgment received preclusive effect in a subsequent proceeding to determine dischargeability of the debt.

A third court echoed these results in In re Docteroff. 133 F.3d 210 (3rd Cir. 1997). The Third Circuit held that a default judgment entered against a defendant in a fraud action as a sanction for the defendant's repeated and bad-faith refusals to comply with discovery requests collaterally estopped the defendant from claiming that the debt underlying the judgment was dischargeable in bankruptcy. See id. at 212-13. A corporation and an individual sued Docteroff alleging fraud. See id. at 213. Although Docteroff answered the complaint and noticed one of the plaintiff's depositions, he repeatedly refused to submit to properly noticed depositions or respond to numerous legitimate requests for production of documents despite court orders and warnings. See id. The court found Docteroff's non-compliance to be willful and in bad faith and, as a sanction, entered default judgment against him on the

issue of liability. See id. at 213-14. The court ordered a trial on damages. See id. at 214. On the day the trial was to begin, Docteroff filed a Chapter 11 bankruptcy petition. See id. When plaintiffs then filed an adversary action against Docteroff, the bankruptcy court found that the default judgment had collateral estoppel effect. See id. The district court and Third Circuit affirmed. See id.

The Third Circuit observed that the situation before it was "not a typical default judgment where a defendant neglects or elects not to participate in any manner" due to inconvenience, expense or some other reason. Id. at 215. To the contrary, Docteroff had "participated extensively" in the litigation by filing an answer, noticing his opponent's deposition, engaging several lawyers, filing papers with the court, and corresponding with opposing counsel. See id. Ultimately, Docteroff "simply elected not to comply with court orders." Id. In light of this choice, the Third Circuit "d[id] not hesitate" to conclude that collateral estoppel precluded an attack on the issues underlying the default judgment. Id. To hold otherwise would "give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple." Id.

The case before us falls squarely in line with Daily, Bush and Docteroff. Over the course of nearly three years -- far longer even than the defendants in the three aforementioned cases -- Dr. Bruetman participated extensively in the New York

- 16 -

litigation. Throughout he was represented by counsel. Through counsel, Dr. Bruetman filed an answer, engaged in discovery, participated in the preparation of a pretrial order, and filed a motion for summary judgment. The parties deposed at least 12 witnesses and exchanged thousands of pages of documents. Dr. Bruetman retained an expert witness. The pretrial order listed 252 exhibits for Herbstein and more than 700 for Dr. Bruetman.

Notwithstanding this extensive participation, Dr. Bruetman failed to comply with the court's order to disclose his assets and financial conditions. That information was relevant to Herbstein's punitive damages claim. The first such order was issued in October 1991. By July 1992 Dr. Bruetman had not complied, prompting the New York court to enter on July 14 an order instructing Dr. Bruetman to disclose the financial information by July 23 or suffer the penalty of a default judgment for the relief demanded in Herbstein's complaint. Dr. Bruetman did not disclose the information. A default judgment issued in the amount of $2,737,924.40.

In this atypical setting for default judgment, where Dr. Bruetman participated extensively then failed to comply with an express court order issued multiple times at a risk of incurring default, we agree with the Bankruptcy Court and the Third, Ninth and Eleventh Circuits that Dr. Bruetman should not now be able to sidestep the collateral estoppel doctrine and litigate an issue in this forum that was forestalled in

New York due solely to Dr. Bruetman's decisions. Dr. Bruetman is not entitled to a second bite at the apple. The issues underlying the New York default judgment were "actually litigated" for purposes of the collateral estoppel doctrine. To hold otherwise would "give [Bruetman] who abuse[d] the processes and dignity of the court an undeserved second bite at the apple." Docteroff, 133 F.3d at 215.

Dr. Bruetman also challenges application of the collateral estoppel doctrine on two additional grounds, claiming that the issues in the two proceedings were not the same and that the determination of the issue was not essential to the final judgment. In support of this first contention, Dr. Bruetman identifies a "lacuna" in the Court's analysis: the Court's comparison of the allegations of Herbstein's RICO complaint to the elements of the two claims brought in Herbstein's adversary proceeding. Dr. Bruetman believes that the Bankruptcy Court erred in relying on the elements of the adversary claims rather than the allegations in the adversary complaint. Dr. Bruetman offers no legal support for this proposition, and indeed there is none. It was sufficient for the Bankruptcy Court to determine whether the allegations of the RICO complaint could state a claim under the two dischargeability provisions invoked in the adversary complaint. See id. at 215 (stating that the test of sameness is whether all of the elements of the relevant dischargeability provisions are encompassed by the

allegations made in the complaint underlying the default judgment). After a careful analysis, the Bankruptcy Court answered this question affirmatively, and we affirm.

Finally, with respect to the essentiality element of the collateral estoppel doctrine, the Bankruptcy Court found that entry of the treble damages award in the New York default judgment established Dr. Bruetman's liability under the RICO claim in the New York action. Because the RICO count was the only count that requested treble damages, logic dictates that the elements of that claim were essential to the judgment. This inference, drawn by the Bankruptcy Court from the record before it, is unassailable. Dr. Bruetman wrongly characterizes this determination as a "fallacy." It is hardly that. Rather, it is the product of the Bankruptcy Court's thorough review of the record which we shall not disturb upon review.

Accordingly, the Bankruptcy Court properly concluded that all of the elements were present to justify application of the collateral estoppel doctrine, thereby precluding Dr. Bruetman from relitigating those issues in the BankruptcyCourt.

### 3. Effect of the Argentina Proceedings

Dr. Bruetman believes he is entitled to judgment as a matter of law on his cross-motion for summary judgment. The cross-motion argued that the issues asserted in Counts I and II of Herbstein's Amended Adversary Complaint were fully litigated in

Argentina adversely to Herbstein, thus precluding Herbstein from raising them in the instant proceedings. The Bankruptcy Court denied the motion. We affirm.

The Bankruptcy Court concluded that none of the Argentine proceedings culminated in final judgments. Despite the submission of numerous affidavits from experts in the Argentine legal system, Bruetman failed to establish a genuine issue of material fact as to the finality of any so-called judgments issued from the Argentine courts. The New York court reached the same result years earlier. Although Bruetman criticizes the Bankruptcy Court for borrowing from the New York conclusion, the New York ruling is relevant because, as we have ruled *supra*, the issues in the New York complaint and the Adversary Complaint are the same. Accordingly, we affirm the Bankruptcy Court's determination that the Argentine proceedings did not preclude Herbstein from raising the issues asserted in Counts I and II of the Amended Adversary Complaint.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Bankruptcy Court.

Charles P. Kocoras
United States District Judge

Dated: _____ September 6, 2001 _____